# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| Sean Craig,<br><br>            Plaintiff,<br><br>v.<br><br>Equifax Information Services LLC,<br>Experian Information Solutions, Inc.,<br>TransUnion LLC, Pennymac Loan<br>Services, LLC, and Family Horizons<br>Credit Union,<br><br>            Defendants. | Civil Action No: 1:24-cv-00135<br><br><br>**COMPLAINT**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

### INTRODUCTION

1.  The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

2.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

3.  Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

4.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer

reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

5.    The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6.    The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.

7.    Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

8.    Sean Craig ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), TransUnion LLC ("TU"), Pennymac Loan Services, LLC ("Pennymac"), and Family Horizons Credit Union ("FHCU") (jointly as "Defendants"), regarding erroneous reports of derogatory credit information and Defendants' failure to maintain maximum possible accuracy as to Plaintiff's credit reports.

9.    While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

10.   Unless otherwise stated, all the conduct engaged in by Defendants took place in Indiana.

11.   Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

12.   Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

13.   Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1681 *et seq*.

14.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendant transacts business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

15.   Plaintiff resides in this District.

## PARTIES

16.   Plaintiff is an adult individual and is "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

17.   Defendant Equifax is a business entity doing business in the Southern District of Indiana.

18.   Defendant Equifax's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

19.   Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

20.   Defendant Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

21.   Defendant Experian is a business entity doing business in the Southern District of Indiana.

22. Defendant Experian's registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN, 46204.

23. Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

24. Defendant Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

25. Defendant TU is a business entity doing business in the Southern District of Indiana.

26. Defendant TU's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

27. Defendant TU regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

28. Defendant TU is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

29. Defendant Pennymac is a business entity doing business in the Southern District of Indiana.

30. Defendant Pennymac's registered agent address is: C T Corporate Systems, 334 North Senate Ave., Indianapolis, IN 46204.

31. Defendant Pennymac is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

32. Defendant FHCU is a business entity doing business in the Southern District of Indiana.

33.    Defendant FHCU's registered agent and address is:    Keith Wright, 6665 E. 21st St., Indianapolis, IN, 46219.

34.    Defendant FHCU is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

35.    Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

36.    Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

37.    Plaintiff is informed and believes and, on that basis, alleges that at all times mentioned herein each Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each respective Defendant is liable to Plaintiff for the relief prayed for herein.

## FACTUAL ALLEGATIONS

38.    Sometime on or before August 2017, Plaintiff purchased a home that was financed with a mortgage (the "Mortgage").

39.    The Mortgage was serviced by Pennymac (the "Pennymac Account").

40.    Sometime on or before December 2017, Plaintiff purchased a vehicle financed by a loan held by FHCU (the "FHCU Account").

41.    On or about November 24, 2021, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana. Plaintiff's case was assigned Case Number 21-05326-RLM-13 (the "Bankruptcy").

42.    On or about June 8, 2022, Plaintiff's bankruptcy plan was confirmed.

43.    The Pennymac Account and FHCU Account were each identified in Plaintiff's Chapter 13 Plan as accounts to be paid outside of the bankruptcy plan and directly to the respective creditors.

44.    This designation and treatment of the Pennymac Account and the FHCU Account in the Bankruptcy means that each account remains unaffected by the Bankruptcy and the Chapter 13 Plan specifically notes that direct pay secured creditors, such as Pennymac and FHCU, are not paid through the Trustee conduit and a specific nonstandard provision applies to them.

45.    Plaintiff's confirmed Chapter 13 Plan included a nonstandard provision that stated:

> For all creditors receiving direct payments outside the Trustee conduit as specified under 8(d) of this plan (direct pay), the original contract terms are not changed or modified. The payment due dates, application of payments, assessment of late fees and attorney fees, and balances owed are controlled by the original contract. The direct pay debts herein described shall not be subject to discharge unless this case is converted to a case under chapter 7, 11, 12 or if the debtor files a motion to modify this Chapter 13 Plan under 11 U.S.C. § 1329 changing the treatment of the specified creditor and or debt.

46.    For those creditors subject to the above noted nonstandard provision in the confirmed Chapter 13 Plan, there is an obligation for those who choose to credit report to do so in conformity with the original contractual terms agreed upon between the parties.

47.    This means that creditors who credit report must report the balance of the account, along with the recent payment, payments made, and the current status of those payments.

48.    Additionally, since Plaintiff is paying Pennymac and FHCU directly on their respective accounts, the balance and payment information on each account should be reflected upon Plaintiff's credit reports, as nothing stands between Plaintiff and the ongoing contractual relationships Plaintiff has with those respective creditors.

49.    Pennymac received notice of the Chapter 13 Plan.

50.    FHCU received notice of the Chapter 13 Plan.

51.    Plaintiff has made monthly payments to Pennymac on the Pennymac Account.

52.    Plaintiff has made monthly payments to FHCU on the FHCU Account.

53.    Despite the confirmed Chapter 13 Plan, the Pennymac Account was reported by Pennymac, Experian, TU, and Equifax without a balance or payment information on Plaintiff's respective Experian, TU, and Equifax credit reports.

54.    As a result, Pennymac, Experian, TU, and Equifax reported the Pennymac Account on Plaintiff's credit reports in an inaccurate, incomplete, and/or materially misleading way.

55.    Despite the confirmed Chapter 13 Plan, the FHCU Account was reported by Experian, TU, and Equifax without a balance or payment information on Plaintiff's respective Experian, TU, and Equifax credit reports.

56.    As a result, FHCU, Experian, TU, and Equifax reported the FHCU Account on Plaintiff's credit reports in an inaccurate, incomplete, and/or materially misleading way.

57.    Plaintiff's creditors and potential creditors have accessed Plaintiff's credit reports while the misreporting described herein was on Plaintiff's credit reports and were misinformed by Defendants about Plaintiff's credit worthiness.

### *Pennymac and Experian's Inaccurate Reporting of the Pennymac Account*

58.    Upon information and belief, sometime before March 13, 2023, Pennymac and Experian were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the Pennymac Account.

59.    Upon information and belief, the Pennymac Account was reported on the Experian report with no balance, no amount paid, and no payment history.

60.    Upon information and belief, the Pennymac Account also reported on the Experian report with bankruptcy information, suggesting that the Pennymac Account was included in or subject to discharge in the Bankruptcy.

61.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Pennymac Account, Pennymac and Experian were incorrectly making it appear as if the Pennymac Account did not have a balance or a positive payment status.

62.    Instead, the Pennymac Account reported as though it was closed, with no balance or recent payment information and that the account would be discharged in bankruptcy.

63.    It is inaccurate, incomplete, and/or materially misleading for Pennymac and Experian to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

64.    However, Pennymac and Experian either reported or caused to be reported inaccurate information as discussed herein.

### *FHCU and Experian's Inaccurate Reporting of the FHCU Account*

65.    Upon information and belief, sometime before March 13, 2023, FHCU and Experian were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the FHCU Account.

66.   Upon information and belief, the FHCU Account was reported on the Experian report with no balance, no amount paid, and no payment history.

67.   Upon information and belief, the FHCU Account also reported on the Experian report with bankruptcy information, suggesting that the FHCU Account was included in or subject to discharge in the Bankruptcy.

68.   By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the FHCU Account, FHCU and Experian were incorrectly making it appear as if the FHCU Account did not have a balance or a positive payment status.

69.   Instead, the FHCU Account reported as though it was closed, with no balance or recent payment information and that the account would be discharged in bankruptcy.

70.   It is inaccurate, incomplete, and/or materially misleading for FHCU and Experian to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

71.   However, FHCU and Experian either reported or caused to be reported inaccurate information as discussed herein.

### *Pennymac and Equifax's Inaccurate Reporting of the Pennymac Account*

72.   Upon information and belief, sometime before March 13, 2023, Pennymac and Equifax were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the Pennymac Account.

73.   Upon information and belief, the Pennymac Account was reported on the Equifax report with no balance, no amount paid, and no payment history.

74.   Upon information and belief, the Pennymac Account also reported on the Equifax report with bankruptcy information, suggesting that the Pennymac Account was included in or subject to discharge in the Bankruptcy.

75.  By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Pennymac Account, Pennymac and Equifax were incorrectly making it appear as if the Pennymac Account did not have a balance or a positive payment status.

76.  Instead, the Pennymac Account reported as though it was closed, with no balance or recent payment information and that the account would be discharged in bankruptcy.

77.  It is inaccurate, incomplete, and/or materially misleading for Pennymac and Equifax to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

78.  However, Pennymac and Equifax either reported or caused to be reported inaccurate information as discussed herein.

### *FHCU and Equifax's Inaccurate Reporting of the FHCU Account*

79.  Upon information and belief, sometime before March 13, 2023, FHCU and Equifax were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the FHCU Account.

80.  Upon information and belief, the FHCU Account was reported on the Equifax report with no balance, no amount paid, and no payment history.

81.  Upon information and belief, the FHCU Account also reported on the Equifax report with bankruptcy information, suggesting that the FHCU Account was included in or subject to discharge in the Bankruptcy.

82.  By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the FHCU Account, FHCU and Equifax were incorrectly making it appear as if the FHCU Account did not have a balance or a positive payment status.

83.  Instead, the FHCU Account reported as though it was closed, with no balance or recent payment information and that the account would be discharged in bankruptcy.

84. It is inaccurate, incomplete, and/or materially misleading for FHCU and Equifax to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

85. However, FHCU and Equifax either reported or caused to be reported inaccurate information as discussed herein.

### *Pennymac and TU's Inaccurate Reporting of the Pennymac Account*

86. Upon information and belief, sometime before March 13, 2023, Pennymac and TU were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the Pennymac Account.

87. Upon information and belief, the Pennymac Account was reported on the TU report with no balance, no amount paid, and no payment history.

88. Upon information and belief, the Pennymac Account also reported on the TU report with bankruptcy information, suggesting that the Pennymac Account was included in or subject to discharge in the Bankruptcy.

89. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Pennymac Account, Pennymac and TU were incorrectly making it appear as if the Pennymac Account did not have a balance or a positive payment status.

90. Instead, the Pennymac Account reported as though it was closed, with no balance or recent payment information and that the account would be discharged in bankruptcy.

91. It is inaccurate, incomplete, and/or materially misleading for Pennymac and TU to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

92. However, Pennymac and TU either reported or caused to be reported inaccurate information as discussed herein.

### *FHCU and TU's Inaccurate Reporting of the FHCU Account*

93.    Upon information and belief, sometime before March 13, 2023, FHCU and TU were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the FHCU Account.

94.    Upon information and belief, the FHCU Account was reported on the TU report with no balance, no amount paid, and no payment history.

95.    Upon information and belief, the FHCU Account also reported on the TU report with bankruptcy information, suggesting that the FHCU Account was included in or subject to discharge in the Bankruptcy.

96.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the FHCU Account, FHCU and TU were incorrectly making it appear as if the FHCU Account did not have a balance or a positive payment status.

97.    Instead, the FHCU Account reported as though it was closed, with no balance or recent payment information and that the account would be discharged in bankruptcy.

98.    It is inaccurate, incomplete, and/or materially misleading for FHCU and TU to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

99.    However, FHCU and TU either reported or caused to be reported inaccurate information as discussed herein.

### *Plaintiff's Experian Dispute*

100.    On or after March 13, 2023, Plaintiff sent a letter to Experian to dispute Pennymac and Experian's reporting of the Pennymac Account on Plaintiff's Experian credit report pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "Experian Dispute").

101.    Plaintiff also disputed Experian and FHCU's reporting of the FHCU Account in the Experian Dispute.

102.    Specifically, Plaintiff explained in the Experian Dispute that the Pennymac Account and the FHCU Account were each being paid outside of Plaintiff's Chapter 13 Plan.

103.    Plaintiff requested that Pennymac and Experian list the current balance and the ongoing payments Plaintiff was making on the Pennymac Account, in compliance with Plaintiff's Chapter 13 Plan.

104.    Plaintiff further explained that the Pennymac Account is not subject to discharge in the Bankruptcy.

105.    Plaintiff also requested that FHCU and Experian list the current balance and the ongoing payments Plaintiff was making on the FHCU Account, in compliance with Plaintiff's Chapter 13 Plan.

106.    Plaintiff again explained that the FHCU Account is not subject to discharge in the Bankruptcy.

107.    Plaintiff attached supporting documents to the Experian Dispute, including the Chapter 13 Plan.

108.    Experian received Plaintiff's Experian Dispute.

109.    Upon receipt of the Experian Dispute, Experian was required to conduct reinvestigations into the Pennymac Account and the FHCU Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

110.    Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Pennymac of Plaintiff's Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Experian Dispute for Pennymac to

review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

111. Pursuant to 15 U.S.C. § 1681s-2(b), Pennymac had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

112. A reasonable reinvestigation and/or investigation by Experian and Pennymac respectively would have indicated that they were reporting the Pennymac Account inaccurately, incompletely, and/or in a materially misleading way.

113. However, after receipt of the Experian Dispute, Experian and Pennymac continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Experian credit report.

114. Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify FHCU of Plaintiff's Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Experian Dispute for FHCU to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

115. Pursuant to 15 U.S.C. § 1681s-2(b), FHCU had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

116. A reasonable reinvestigation and/or investigation by Experian and Pennymac respectively would have indicated that they were reporting the FHCU Account inaccurately, incompletely, and/or in a materially misleading way.

117. However, after receipt of the Experian Dispute, Experian and FHCU continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Experian credit report.

14

***Plaintiff's Equifax Dispute***

118.    On or after March 13, 2023, Plaintiff sent a letter to Equifax to dispute Pennymac and Equifax's reporting of the Pennymac Account on Plaintiff's Equifax credit report pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "Equifax Dispute").

119.    Plaintiff also disputed Equifax and FHCU reporting of the FHCU Account in the Equifax Dispute.

120.    Specifically, Plaintiff explained in the Equifax Dispute that the Pennymac Account and the FHCU Account were each being paid outside of Plaintiff's Chapter 13 Plan.

121.    Plaintiff requested that Pennymac and Equifax list the current balance and the ongoing payments Plaintiff was making on the Pennymac Account, in compliance with Plaintiff's Chapter 13 Plan.

122.    Plaintiff further explained that the Pennymac Account is not subject to discharge in the Bankruptcy.

123.    Plaintiff also requested that FHCU and Equifax list the current balance and the ongoing payments Plaintiff was making on the FHCU Account, in compliance with Plaintiff's Chapter 13 Plan.

124.    Plaintiff again explained that the FHCU Account is not subject to discharge in the Bankruptcy.

125.    Plaintiff attached supporting documents to the Equifax Dispute, including the Chapter 13 Plan.

126.    Equifax received Plaintiff's Equifax Dispute.

127.    Upon receipt of the Equifax Dispute, Equifax was required to conduct reinvestigations into the Pennymac Account and the FHCU Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

128.    Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Pennymac of Plaintiff's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Equifax Dispute for Pennymac to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

129.    Pursuant to 15 U.S.C. § 1681s-2(b), Pennymac had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

130.    A reasonable reinvestigation and/or investigation by Equifax and Pennymac respectively would have indicated that they were reporting the Pennymac Account inaccurately, incompletely, and/or in a materially misleading way.

131.    However, after receipt of the Equifax Dispute, Equifax and Pennymac continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Equifax credit report.

132.    Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify FHCU of Plaintiff's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Equifax Dispute for FHCU to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

133.    Pursuant to 15 U.S.C. § 1681s-2(b), FHCU had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

134. A reasonable reinvestigation and/or investigation by Equifax and FHCU respectively would have indicated that they were reporting the FHCU Account inaccurately, incompletely, and/or in a materially misleading way.

135. However, after receipt of the Equifax Dispute, Equifax and FHCU continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Equifax credit report.

### Plaintiff's TU Dispute

136. On or after March 13, 2023, Plaintiff sent a letter to TU to dispute Pennymac and TU's reporting of the Pennymac Account on Plaintiff's TU credit report pursuant to 15 U.S.C. § 1681i by notifying TU, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "TU Dispute").

137. Plaintiff also disputed TU and FHCU's reporting of the FHCU Account in the TU Dispute.

138. Specifically, Plaintiff explained in the TU Dispute that the Pennymac Account and the FHCU Account were each being paid outside of Plaintiff's Chapter 13 Plan.

139. Plaintiff requested that Pennymac and TU list the current balance and the ongoing payments Plaintiff was making on the Pennymac Account, in compliance with Plaintiff's Chapter 13 Plan.

140. Plaintiff further explained that the Pennymac Account is not subject to discharge in the Bankruptcy.

141. Plaintiff also requested that FHCU and TU list the current balance and the ongoing payments Plaintiff was making on the FHCU Account, in compliance with Plaintiff's Chapter 13 Plan.

142. Plaintiff again explained that the FHCU Account is not subject to discharge in the Bankruptcy.

143.    Plaintiff attached supporting documents to the TU Dispute, including the Chapter 13 Plan.

144.    TU received Plaintiff's TU Dispute.

145.    Upon receipt of the TU Dispute, TU was required to conduct reinvestigations into the Pennymac Account and the FHCU Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

146.    Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify Pennymac of Plaintiff's TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's TU Dispute for Pennymac to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

147.    Pursuant to 15 U.S.C. § 1681s-2(b), Pennymac had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

148.    A reasonable reinvestigation and/or investigation by TU and Pennymac respectively would have indicated that they were reporting the Pennymac Account inaccurately, incompletely, and/or in a materially misleading way.

149.    However, after receipt of the TU Dispute, TU and Pennymac continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's TU credit report.

150.    Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify FHCU of Plaintiff's TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's TU Dispute for FHCU to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

151.    Pursuant to 15 U.S.C. § 1681s-2(b), FHCU had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

152.  A reasonable reinvestigation and/or investigation by TU and FHCU respectively would have indicated that it was reporting the FHCU Account inaccurately, incompletely, and/or in a materially misleading way.

153.  However, after receipt of the TU Dispute, TU and FHCU continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's TU credit report.

### *Pennymac, FHCU, and Experian's Continued Inaccurate Reporting after the Experian Dispute*

154.  Following Pennymac, FHCU, and Experian's respective investigations into the Experian Dispute, on or after April 19, 2023, Plaintiff received dispute results from Experian (the "Experian Dispute Results").

155.  Experian and Pennymac failed to correct the inaccurate, incomplete, and/or materially misleading information on the Pennymac Account on the Experian Dispute Results.

156.  Instead, on the Experian Dispute Results, Pennymac and Experian continued to report the Pennymac Account in an inaccurate, incomplete, and/or materially misleading way.

157.  Pennymac and Experian's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Pennymac Account was negative, with no balance or recent payment information.

158.  Pennymac and Experian's reporting was also inaccurate and/or materially misleading because it contained a bankruptcy status that made it appear as though the Pennymac Account was subject to payment by the Trustee in the Bankruptcy Plan and/or would be discharged in the Bankruptcy.

159.  What should have been a positive account with recent payment and balance information was instead reporting as a negative account.

160.    Pennymac and Experian's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the Pennymac Account were problematic because Plaintiff's dispute included relevant supporting documents, which Pennymac and Experian chose to ignore.

161.    FHCU Experian also failed to correct the inaccurate, incomplete, and/or materially misleading information on the FHCU Account on the Experian Dispute Results.

162.    Instead, on the Experian Dispute Results, FHCU and Experian continued to report the FHCU Account in an inaccurate, incomplete, and/or materially misleading way.

163.    FHCU and Experian's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the FHCU Account was negative, with no balance or recent payment information.

164.    FHCU and Experian's reporting was also inaccurate and/or materially misleading because it contained a bankruptcy status that made it appear as though the FHCU Account was subject to payment by the Trustee in the Bankruptcy Plan and/or would be discharged in the Bankruptcy.

165.    What should have been a positive account with recent payment and balance information was instead reporting as a negative account.

166.    FHCU and Experian's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the FHCU Account were problematic because Plaintiff's dispute included relevant supporting documents, which FHCU and Experian chose to ignore.

167.   On a July 27, 2023 Experian credit report, both the Pennymac Account and FHCU Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information, along with bankruptcy indicators.

168.   On a September 23, 2023 Experian credit report, both the Pennymac Account and FHCU Account were continuing to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information, along with bankruptcy indicators.

***Pennymac, FHCU, and Equifax's Continued Inaccurate Reporting after the Equifax Dispute***

169.   Following Pennymac, FHCU, and Equifax's respective investigations into the Equifax Dispute, on or after April 1, 2023, Plaintiff received dispute results from Equifax (the "Equifax Dispute Results").

170.   The Equifax Dispute Results indicated that the FHCU Account had been updated, but the Equifax Dispute Results did not actually show how the FHCU Account was reporting.

171.   The Equifax Dispute Results did not address the Pennymac Account, and instead provided a response to an unrelated tradeline that Plaintiff did not dispute.

172.   Upon information and belief, Equifax and Pennymac failed to correct the inaccurate, incomplete, and/or materially misleading information on the Pennymac Account after receipt of the Equifax dispute.

173.   Additionally, upon information and belief, Equifax and FHCU failed to correct the inaccurate, incomplete, and/or materially misleading information on the FHCU Account after receipt of the Equifax dispute.

174.   On an Equifax report dated July 28, 2023 (the "July Equifax Report"), Equifax and Pennymac continued to report inaccurate, incomplete, and/or materially misleading information on the Pennymac Account.

175.   Pennymac and Equifax's reporting on the July Equifax Report was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Pennymac Account was negative, with no balance or recent payment information.

176.   Pennymac and Equifax also inaccurately reported the Pennymac Account as closed.

177.   Pennymac and Equifax's reporting on the July Equifax Report was also inaccurate and/or materially misleading because it contained a bankruptcy status that made it appear as though the Pennymac Account was subject to payment by the Trustee in the Bankruptcy Plan and/or would be discharged in the Bankruptcy.

178.   What should have been a positive account with payment and balance information was instead reporting as a negative account.

179.   Pennymac and Equifax's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the Pennymac Account were problematic because Plaintiff's dispute included relevant supporting documents, which Pennymac and Equifax chose to ignore.

180.   On the July Equifax Report, Equifax and FHCU continued to report inaccurate, incomplete, and/or materially misleading information on the FHCU Account.

181.   FHCU and Equifax's reporting on the July Equifax Report was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the FHCU Account was negative, with no balance or recent payment information.

182.   FHCU and Equifax also inaccurately reported the FHCU Account as closed.

183. FHCU and Equifax's reporting on the July Equifax Report was also inaccurate and/or materially misleading because it contained a bankruptcy status that made it appear as though the FHCU Account was subject to payment by the Trustee in the Bankruptcy Plan and/or would be discharged in the Bankruptcy.

184. What should have been a positive account with payment and balance information was instead reporting as a negative account.

185. FHCU and Equifax's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the FHCU Account were problematic because Plaintiff's dispute included relevant supporting documents, which FHCU and Equifax chose to ignore.

186. On a January 4, 2024 Equifax credit report, both the Pennymac Account and FHCU Account were continuing to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information, along with bankruptcy indicators.

### *Pennymac, FHCU, and TU's Continued Inaccurate Reporting after the TU Dispute*

187. Following Pennymac, FHCU, and TU's respective investigations into the TU Dispute, on or after March 29, 2023, Plaintiff received dispute results from TU (the "TU Investigation Results").

188. TU and Pennymac failed to correct the inaccurate, incomplete, and/or materially misleading information on the Pennymac Account on the TU Investigation Results.

189. Instead, on the TU Investigation Results, Pennymac and TU continued to report the Pennymac Account in an inaccurate, incomplete, and/or materially misleading way.

190. Pennymac and TU's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Pennymac Account was negative, with no balance or recent payment information.

191. Pennymac and TU's reporting was also inaccurate and/or materially misleading because it contained a bankruptcy status that made it appear as though the Pennymac Account was subject to payment by the Trustee in the Bankruptcy Plan and/or would be discharged in the Bankruptcy.

192. What should have been a positive account with payment and balance information was instead reporting as a negative account.

193. Pennymac and TU's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the Pennymac Account were problematic because Plaintiff's dispute included relevant supporting documents, which Pennymac and TU chose to ignore.

194. TU and FHCU also failed to correct the inaccurate, incomplete, and/or materially misleading information on the FHCU Account on the TU Investigation Results.

195. FHCU and TU's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the FHCU Account was negative, with no balance or recent payment information.

196. FHCU and TU's reporting was also inaccurate and/or materially misleading because it contained a bankruptcy status that made it appear as though the FHCU Account was subject to payment by the Trustee in the Bankruptcy Plan and/or would be discharged in the Bankruptcy.

197.    What should have been a positive account with payment and balance information was instead reporting as a negative account.

198.    FHCU and TU's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the information on the FHCU Account were problematic because Plaintiff's dispute included relevant supporting documents, which FHCU and TU chose to ignore.

199.    On a July 28, 2023 TU credit report, both the Pennymac Account and FHCU Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information, along with bankruptcy indicators.

200.    On a September 23, 2023 TU credit report, both the Pennymac Account and FHCU Account were continuing to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information, along with bankruptcy indicators.

### *The Impact of Inaccurate or Misleading Information on Consumer Reports*

201.    A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

i.    credit or insurance to be used primarily for personal, family, or household purposes;

ii.    employment purposes; or

iii.    any other purpose authorized under section 1681b.

202.    As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

203.  A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

204.  The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

### *Credit Scoring*

205.  The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

206.  Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer from reduced FICO credit scores.

207.  The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

208.  The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

209.  FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history

accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

210. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

211. Inaccurate, incomplete, and/or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

212. Here, the inaccurate, incomplete, and/or materially misleading reporting of the Pennymac Account and FHCU Account adversely affects Plaintiff's FICO score as Plaintiff's credit reports make it appear as though each account is negative, and that Plaintiff had not been paying on either account at all.

213. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

214.    Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### *Defendants' Violations of the FCRA and Plaintiff's Damages*

215.    It is inaccurate, incomplete, and/or materially misleading to report an account does not have a balance when it does in fact have a balance.

216.    It is inaccurate, incomplete, and/or materially misleading to report an account does not have any payments made upon it when the consumer is in fact making payments on the account.

217.    It is inaccurate, incomplete, and/or materially misleading to suppress positive and accurate account balance and payment data.

218.    It is inaccurate, incomplete, and/or materially misleading to report an account is closed when it is open, and a consumer is paying on it as agreed.

219.    It is inaccurate, incomplete, and/or materially misleading to report bankruptcy coding on an account when the consumer is paying on the account directly to the creditor in conformity with the original contractual terms.

220.    As evidenced by Experian's failure to report accurate information on the Pennymac Account and FHCU Account—despite having notice that the respective accounts in fact had a balance and recent payments, along with possessing relevant bankruptcy documents—Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

28

221.    Experian either ignored or failed to review all relevant information on the Pennymac Account and FHCU Account and thus failed to ensure maximum possible accuracy of the information concerning the individuals about whom the reports relate.

222.    As evidenced by Equifax's failure to report accurate information on the Pennymac Account and FHCU Account— despite having notice that the respective accounts in fact had a balance and recent payments, along with possessing relevant bankruptcy documents—Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

223.    Equifax either ignored or failed to review all relevant information on the Pennymac Account and FHCU Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

224.    As evidenced by TU's failure to report accurate information on the Pennymac Account and FHCU Account— despite having notice that the respective accounts in fact had a balance and recent payments, along with possessing relevant bankruptcy documents—TU failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

225.    TU either ignored or failed to review all relevant information on the Pennymac Account and FHCU Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

226.    Additionally, as evidenced by the inaccurate, incomplete, and/or materially misleading re-reporting after Plaintiff sent Defendants written disputes identifying the inaccurate,

incomplete, and/or materially misleading information related to the Pennymac Account and FHCU Account, Defendants, upon receipt of Plaintiff's disputes, failed to conduct a reasonable reinvestigations and/or investigations with respect to the disputed information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

227.   Defendants failed to review all relevant information provided by Plaintiff in the disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

228.   Due to Defendants' failure to reasonably investigate and/or reinvestigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate, incomplete, and/or materially misleading information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

229.   By reporting inaccurate, incomplete, and/or materially misleading account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

230.   Defendants' inaccurate, incomplete, and/or materially misleading reporting on the Pennymac Account and FHCU Account—in light of their knowledge of the positive data they could report on the respective accounts—was willful. Plaintiff is, accordingly, eligible for statutory damages.

231.   Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

232. Based upon Defendants' knowledge of each respective account and the data the Defendants possessed on each account, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under the FCRA.

233. Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer actual damages, including, without limitation: fear of credit denials, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, humiliation, frustration, and emotional distress.

234. Plaintiff entered bankruptcy to clean up and improve Plaintiff's credit, lay the groundwork for future credit, and to pay and resolve debts.

235. Upon information and belief, Plaintiff's Experian, Equifax, and Trans Union credit reports were published to third parties while the inaccurate information on the Pennymac Account and/or FHCU Account was reporting.

236. Instead of those third parties seeing the Pennymac Account and FHCU Account as positive accounts that Plaintiff was paying on every month, they instead appeared as a negative account subject to discharge in bankruptcy, and without any payment data. This inaccurate, incomplete, and/or materially misleading information was published to those third parties.

237. Defendants thus caused a defamation-type harm upon Plaintiff.

238. Plaintiff made a commitment to pay his debts as agreed in bankruptcy in the hope of obtaining a fresh start and better credit, but Plaintiff worries the inaccurate, incomplete, and/or materially misleading information concerning the Pennymac Account and FHCU Account will prevent that from occurring.

239. Upon information and belief, while the inaccurate, incomplete, and/or materially misleading information concerning the Pennymac Account and FHCU Account appeared on Plaintiff's credit reports, Plaintiff was denied credit for loans to repair Plaintiff's gas furnace and air conditioning unit.

240. While the inaccurate information concerning the Pennymac Account and FHCU Account appeared on Plaintiff's credit reports, upon information and belief, Plaintiff was offered credit through Mission Lane, but with terms less favorable than Plaintiff would have otherwise been offered due to how the Pennymac Account and FHCU Account were each reporting on his credit reports.

241. Plaintiff believes the inaccurate, incomplete and/or materially misleading reporting on the Pennymac Account and FHCU Account has and may in the future negatively impact his ability to obtain credit to cover the costs of medical and other emergencies for himself and his spouse, which has strained Plaintiff's relationship with his spouse.

242. While the inaccurate information concerning the Pennymac Account and FHCU Account appeared on Plaintiff's credit reports, Plaintiff has avoided seeking credit for fear of denial and harm to his credit score.

243. The stress caused by Defendants' inaccurate reporting on the Pennymac Account and FHCU Account has aggravated Plaintiff's high blood pressure and the frequency and severity of migraine headaches that Plaintiff suffers from.

244. Defendants' inaccurate reporting on the Pennymac Account and FHCU Account after Plaintiff clearly requested a correction has caused Plaintiff stress, fear and anger, as he feels "pinned in a corner" and "stuck", which has resulted in being distracted at work, and has caused insomnia and ongoing worry.

245. Plaintiff has suffered ongoing irritation, frustration, and humiliation knowing that his current and potential lenders have viewed Plaintiff's credit reports that fail to reflect his past and ongoing payments on the Pennymac Account and FHCU Account or the fact that they are not subject to discharge in Plaintiff's bankruptcy.

246. As a result, by reporting inaccurate, incomplete, and/or materially misleading account information, Defendants' acts and omissions have caused in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

247. Creating the false impression that the Pennymac Account and FHCU Account were negative instead of positive creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit reports that is engaged in judgment-based lending.

### FIRST CAUSE OF ACTION
### FCRA - 15 U.S.C. § 1681 *et seq.*

248. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

249. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA, including, but not limited to 15 U.S.C. § 1681e(b) as to Experian, Equifax, and TU.

250. Defendants Experian, Equifax, and TU's acts and omissions were in violation of 15 U.S.C. § 1681i as well.

251. Defendant Pennymac and FHCU's acts and omissions were in violation of 15 U.S.C. § 1681s-2(b).

252. The above-described violations by Defendants were willful, allowing Plaintiff to recover under 15 U.S.C. § 1681n.

253.    As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

254.    In the alternative, Defendants were negligent in their actions, which entitled Plaintiff to recover und 15 U.S.C. § 1681o.

255.    As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

## REQUEST FOR A JURY TRIAL

256.    Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1.    A declaratory judgment that Defendants' actions as discussed herein are unlawful;

2.    Plaintiff's actual damages from each Defendant;

3.    Statutory damages of not less than $100.00 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from each Defendant;

4.    Punitive damages from each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5.    An award of costs of litigation and reasonable attorneys' fees from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and

6.    Any other relief the Court may deem just and proper.

Dated: <u>January 19, 2024</u>

Respectfully Submitted,


By: <u>*/s/Richard J. Shea*</u>
Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC.
*Attorneys for Plaintiff*
6100 N. Keystone Avenue, Suite 620
Indianapolis, IN 46220
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com